# IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF MISSISSIPPI NORTHERN DIVISION

**DIANA MORGAN, as Administratrix of the**
**Estate of Tyrone Wilson and on behalf of the**
**Wrongful Death Beneficiary of Tyrone Wilson**                    **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 3:26-cv-91-KHJ-MTP**

**HINDS COUNTY, MISSISSIPPI; QCHC OF**
**MISSISSIPPI, LLC f/k/a QCHC of MISSISSIPPI, INC.;**
**AND JOHN DOES AND JANE DOES 1–100**                    **DEFENDANTS**

## COMPLAINT (JURY TRIAL DEMANDED)

**COMES NOW**, the Plaintiff, Diana Morgan, as Administratrix of the Estate of Tyrone Wilson and on behalf of the wrongful death beneficiary of Tyrone Wilson (hereinafter "Plaintiff"), by and through undersigned counsel, and files this Complaint against Defendants, and in support thereof would show the Court the following:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment to the United States Constitution, and pursuant to Mississippi's wrongful death and survival statutes.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this Court because all acts and omissions complained of occurred in Hinds County, Mississippi, within the Southern District of Mississippi, Northern Division.

1

## PARTIES

4.     Plaintiff Diana Morgan is the natural mother of Tyrone Wilson, deceased, and is the duly appointed Administratrix of the Estate of Tyrone Wilson, bringing this action on behalf of the Estate and all statutory wrongful-death beneficiary pursuant to Miss. Code Ann. § 11-7-13.

5.     At all relevant times, Tyrone Wilson was a pretrial detainee housed at the Hinds County Detention Center ("HCDC").

6.     Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division. Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the Hinds County Detention Center ("HCDC") and is responsible for providing humane care and treatment to detainees consistent with all constitutional requirements and applicable American Correctional Association standards.

7.     Hinds County is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

8.     Hinds County officials and policymakers have long known that HCDC was chronically understaffed with inadequately trained officers, including as early as August 2013 when Dr. James Austin conducted an inspection of the jail. In the years that followed, multiple independent experts continued to note that HCDC was not adequately staffed, that correctional officers were not properly trained, and that detainees were exposed to an unreasonable risk of harm.

9.     Defendant QCHC of Mississippi, LLC f/k/a QCHC of Mississippi, Inc. and (collectively "QCHC") is a for-profit private medical contractor incorporated under the laws of Alabama and authorized to do business in Mississippi.

10.     At all relevant times, QCHC was under contract with Hinds County to provide on-site medical and mental-health services to inmates housed at HCDC through and until June 30, 2024.

11.     Under its contract, QCHC assumed responsibility for providing medical care consistent with constitutional standards and acted under color of state law for purposes of 42 U.S.C. § 1983.

12.     QCHC's principal place of business is located at 200 Narrows Parkway, Suite A, Birmingham, Alabama 35242, and it may be served through its registered agent, Incorp Services, Inc., 302 Enterprise Drive, Suite A, Oxford, Mississippi 38655.

13.     Defendants John Does and Jane Does 1–100 are unknown officers, medical staff, supervisors, administrators, and employees of Hinds County and/or QCHC who participated in or were responsible for the acts and omissions alleged herein. Plaintiff will amend this Complaint when their identities are discovered.

## DOJ LITIGATION, CONSENT DECREE, AND RECEIVERSHIP

13.     Plaintiff expressly incorporates by reference the existence of the findings, reports, monitoring reports, recommendations, consent decrees, court orders, and related materials filed in *United States of America v. Hinds County, Mississippi*, et al., Civil Action No. 3:16-cv-00489-CWR-RHWR (S.D. Miss. 2016), which concern conditions at the Hinds County Detention Center during the relevant time period.

14. These materials are matters of public record and subject to judicial notice solely for the fact of their issuance and the institutional conditions and issues they address, and not for the truth of the matters asserted therein. Plaintiff does not reattach these materials to avoid duplication and unnecessary enlargement of the record.

15. The referenced materials reflect the existence of longstanding and disputed issues concerning staffing, supervision, classification, protection from inmate-on-inmate violence, and access to medical care at HCDC during the period relevant to Tyrone Wilson's detention.

16. Plaintiff references these materials solely to provide contextual background and to reflect the institutional framework in which the acts and omissions alleged herein occurred, and not to establish liability, notice, or the truth of any factual finding contained therein.

17. Plaintiff's claims are based on the specific custodial decisions, medical clearances, acts, and omissions pleaded herein that affected Tyrone Wilson individually and that are capable of proof through documentary evidence, including classification records, housing logs, medical records, incident reports, contracts, and policies.

18. During the relevant period, the Court overseeing the DOJ litigation conducted hearings and received reports from court-appointed monitors addressing disputed conditions at HCDC, including issues related to supervision, inmate safety, and medical care.

19. Hinds County officials and representatives of contracted service providers, including medical contractors, were present for or otherwise involved in proceedings relating to jail operations during this time period.

20. These proceedings form part of the institutional context in which the custodial and medical decisions affecting Tyrone Wilson were made and provide a framework for understanding

how classification, housing, supervision, and medical clearance decisions were structured and implemented at HCDC.

21. Following years of contested compliance proceedings, a federal receivership was ordered to oversee certain operations at the Hinds County Detention Center.

22. In February 2025, the United States Court of Appeals for the Fifth Circuit affirmed the receivership as an appropriate contempt remedy, while reversing or remanding in part as to certain scope-related findings.

23. Plaintiff references the receivership and related appellate proceedings solely to reflect the institutional history and governance structure of HCDC during the relevant time period, and not as evidence of liability, fault, or notice as to the specific injuries suffered by Tyrone Wilson.

## **FACTS**

24. At all relevant times, Tyrone Wilson was housed at HCDC as a pretrial detainee entitled to protection from punishment and unreasonable risk of harm.

25. The acts and omissions complained of herein did not arise from a single, continuous occurrence, but instead consist of multiple, separate, and distinct custodial and medical decisions, each of which independently exposed Mr. Wilson to a substantial risk of serious harm.

26. Mr. Wilson's housing, classification, and movement were governed by written policies, classification records, incident reports, and housing logs maintained by Defendants.

27. Prior to February 2023, Mr. Wilson experienced ongoing harassment and threats from gang-affiliated inmates.

28. Mr. Wilson expressed fear for his safety and concerns regarding hostile inmates to jail staff.

29. Such complaints and safety concerns should have been documented in HCDC classification records, incident reports, grievances, housing logs, or other institutional records generated or maintained by Defendants.

30. However, Hinds County has a longstanding history of failing to properly record, preserve, or maintain inmate complaints, grievances, and safety-related information, including failures identified and discussed during the DOJ consent decree litigation.

31. Plaintiff references this institutional history solely to provide contextual background regarding recordkeeping practices at HCDC, and not for the truth of the matters asserted in any DOJ findings or reports.

32. Whether Mr. Wilson's complaints were documented, omitted, lost, or never recorded is itself a factual issue central to this litigation and is a matter for discovery and proof through documentary evidence and testimony.

33. In mid-February 2023, and prior to the fatal assault described below, Mr. Wilson was involved in a violent altercation with gang-affiliated inmates who had been harassing him. This incident constituted a separate and distinct custodial occurrence involving failures of supervision, classification and protection.

34. Following this assault, Mr. Wilson complained about continued danger from gang-affiliated inmates and requested protection.

35. Rather than placing Mr. Wilson in protective custody or separating him from known threats, Hinds County moved him to another housing zone. This decision constituted a separate and independent custodial occurrence involving a new opportunity to prevent harm.

36. Mr. Wilson was placed in a cell with another inmate who was gang-affiliated and associated with the same group that had previously threatened and assaulted him.

37.    After this earlier assault, Mr. Wilson was evaluated by QCHC medical staff while housed at HCDC.

38.    Mr. Wilson's condition following the assault presented an objectively serious medical need. A detainee who has recently been subjected to violent trauma faces a substantial risk of internal injury, head trauma, neurological impairment, delayed deterioration, and other life-threatening conditions that require prompt and adequate medical evaluation.

39.    QCHC was aware, or should have been aware, that Mr. Wilson had been involved in a violent assault and that the nature of the assault itself created a substantial risk of serious medical harm if not properly evaluated and treated.

40.    Despite this known and obvious risk, QCHC failed to provide constitutionally adequate medical care. Rather than performing a meaningful trauma-appropriate evaluation, QCHC failed to assess and document Mr. Wilson's neurological status, failed to assess for internal injuries or emergent conditions, and failed to implement any plan for monitoring or follow-up.

41.    QCHC's failures were not the result of mere oversight or negligence, but reflected a conscious disregard of a known and substantial risk of serious harm. QCHC had the ability and authority to order additional evaluation, monitoring, or hospital referral but failed to do so.

42.    QCHC further failed to refer Mr. Wilson to an outside hospital or higher level of care, despite knowing that HCDC lacked the staffing, supervision, and medical resources necessary to safely monitor or treat an injured detainee.

43.    Instead, QCHC affirmatively cleared Mr. Wilson for continued incarceration and housing at HCDC, despite the obvious risk that his injuries could worsen without timely diagnosis and treatment.

44. QCHC knew or should have known that clearing an injured detainee for continued housing under these conditions would expose Mr. Wilson to a substantial risk of serious harm and deprive him of access to necessary medical care.

45. By consciously failing to provide adequate evaluation, monitoring, and escalation of care in the face of an obvious risk, QCHC acted with deliberate indifference to Mr. Wilson's serious medical needs, in violation of the Fourteenth Amendment.

46. After QCHC medically cleared Mr. Wilson, he was moved from Zone C to Zone B and housed with a cellmate who was affiliated with the same gang as the inmates who had previously assaulted him. During the short period of time that Mr. Wilson and his new cellmate were housed together, they were involved in a verbal altercation. HCDC staff were aware of the verbal altercation but failed to move Mr. Wilson to a different cell or otherwise intervene to protect him.

47. On February 23, 2023, during the late evening hours, Mr. Wilson was brutally assaulted by his cellmate inside his housing unit. This assault constituted a separate and distinct occurrence involving failures of supervision, staffing, and timely intervention.

48. The assault was prolonged in nature and involved repeated violent blows and trauma, resulting in extensive injuries and bruising to Mr. Wilson's body.

49. The severity and violence of the assault were such that reasonable correctional staff assigned to supervise the housing unit should have heard the disturbance, altercation, or sounds of violence and intervened, but no staff member responded.

50. Instead, the assault went undetected until a floor walker—another inmate moving through the housing area—discovered Mr. Wilson severely injured and bleeding inside his cell and sought assistance from jail staff.

51. Mr. Wilson sustained catastrophic injuries and died while in custody at HCDC.

**1983 CAUSES OF ACTION**

**COUNT I – FAILURE TO PROTECT (Against Hinds County)**

52. Plaintiff incorporates all preceding paragraphs.

53. Hinds County, acting by and through its elected and appointed officials, policymakers, employees, agents, and Doe Defendants 1–100, knew of and disregarded a substantial risk of serious harm to Tyrone Wilson and acted with deliberate indifference to his safety.

54. Plaintiff further references the existence of reports, findings, monitoring materials, and court orders previously filed of record concerning conditions at the Hinds County Detention Center solely for contextual background and to reflect the institutional framework in which the alleged acts and omissions occurred, and not for the truth of the matters asserted therein.

55. Plaintiff's claims are based on the specific custodial decisions, acts, and omissions pleaded herein—including classification, housing, supervision, and intervention decisions—that directly and proximately caused Tyrone Wilson's injuries and death.

56. Hinds County's acts and omissions were a moving force behind the constitutional violations that resulted in Tyrone Wilson's death.

57. Each failure by Hinds County to protect Mr. Wilson alleged herein constitutes a separate and distinct constitutional violation arising from independent acts or omissions occurring at different times, locations, and decision points, including failures of classification, housing, supervision, and intervention.

58. Further, each failure-to-protect claim asserted by different detainees or estates in separate lawsuits against Hinds County arises from separate custodial decisions, separate factual

circumstances, and separate constitutional violations, and therefore constitutes a separate and distinct occurrence under applicable law enforcement liability policies.

59. Each such separate occurrence independently contributes to liability and damages and is not part of a single, continuous occurrence, but instead triggers separate coverage for purposes of aggregate and per-occurrence limits under applicable insurance policies.

60. Defendant Hinds County and Doe Defendants 1–100, in their individual and official capacities, established, implemented, tolerated, and enforced customs, policies, and practices that directly and proximately caused the deprivation of Tyrone Wilson's constitutional rights and created unconstitutional conditions of confinement.

61. Such unwritten policies, customs, and practices include, but are not limited to, the following:

a. inadequate and improper training, supervision, and discipline of correctional officers;

b. inadequate and improper procedures and practices in screening, hiring, training, supervising, and disciplining officers who condone, tolerate, or fail to prevent inmate-on-inmate violence;

c. inadequate and improper procedures, policies, and practices for investigating officer misconduct, whether through inmate complaints or internally initiated investigations;

d. inadequate or improper procedures, policies, and practices for identifying and taking corrective action against officers in need of retraining, reassignment, or increased supervision through an early warning or accountability system;

e. condoning and allowing inmates to fight;

f. failing to protect inmates from known threats of harm;

g. failing to prevent incidents of violence about which Hinds County employees had actual or constructive warning;

h. failing to properly classify and separate inmates;

i. failing to maintain or implement an effective protective custody system;

j. maintaining a jail with inadequate security, including failures to properly secure housing units and prevent inmates from accessing weapons or dangerous contraband;

k. failing to address the smuggling and circulation of contraband within the facility;

l. chronic understaffing and the hiring and retention of jailers with little to no training or supervision;

m. failing to conduct adequate shakedowns or searches to recover contraband;

n. failing to conduct required safety checks in housing units or to assign officers to adequately supervise housing areas.

62. By exhibiting deliberate indifference to the substantial risk of harm faced by Tyrone Wilson as a result of Hinds County's policies, customs, and practices set forth above, Defendants Hinds County and Doe Defendants 1–100 violated Mr. Wilson's rights under the Fourteenth Amendment to the United States Constitution, which violations directly and proximately resulted in his assault, injuries, and death.

## COUNT II – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (Against QCHC of Mississippi, LLC f/k/a QCHC, Inc.,)

62. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

63. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and, to the extent Mr. Wilson suffered constitutional deprivations prior to his death, pursuant to 42 U.S.C. § 1988 and Mississippi's survival statute, Miss. Code Ann. § 91-7-233.

64. At all relevant times, QCHC was responsible for providing on-site medical care to detainees at HCDC and for conducting medical assessments, determining the need for outside treatment, and making medical clearance decisions that directly affected detainee housing and safety.

11

65. Mr. Wilson's post-assault condition constituted a serious medical need. A reasonable medical provider would recognize that an assaulted detainee may have emergent injuries and requires timely trauma-appropriate assessment, documentation, monitoring, and, when indicated, referral to a hospital for diagnostic testing and treatment.

66. Despite these indicators, QCHC failed to conduct an adequate medical evaluation of Mr. Wilson. QCHC failed to assess for emergent conditions, failed to provide appropriate observation or follow-up, and failed to refer Mr. Wilson to a higher level of care.

67. QCHC's medical clearance decision was not a neutral or isolated medical judgment. It was an affirmative decision that foreseeably returned Mr. Wilson—an injured detainee—to a custodial environment known to be incapable of protecting injured detainees and thereby increased the risk that his serious condition would go untreated and that he would suffer further harm.

68. QCHC knew or should have known that HCDC suffered from chronic understaffing and inadequate supervision, yet cleared Mr. Wilson for continued housing without ensuring that he was medically stabilized, appropriately monitored, or referred for outside evaluation.

69. QCHC's acts and omissions were objectively unreasonable and demonstrated deliberate indifference to Mr. Wilson's serious medical needs.

70. As a direct and proximate result of QCHC's deliberate indifference, Mr. Wilson suffered conscious pain, fear, mental anguish, physical injury, and deprivation of his constitutional rights prior to death, and thereafter suffered fatal injury and death.

## COUNT III – MONELL LIABILITY -EPISODIC ACTS OR OMISSIONS
### (Against Hinds County)

71. Hinds County maintained and operated HCDC pursuant to policies, customs, and practices that resulted in episodic acts and omissions exposing detainees to a substantial risk of

serious harm. DOJ reports, monitoring materials, and related orders are referenced solely as contextual background and not for the truth of the matters asserted.

72. Through specific custodial decisions and failures alleged herein, Hinds County officials and staff acting under color of law exposed Mr. Wilson to a substantial risk of serious harm and deprived him of constitutional rights.

73. Hinds County established, implemented, tolerated, and enforced customs and practices that were the moving force behind the violations, including but not limited to: inadequate training, supervision, and discipline; failure to investigate misconduct; failure to classify and separate inmates; failure to maintain protective custody; inadequate security and supervision; tolerance of inmate-on-inmate violence; chronic understaffing; and failure to conduct safety checks.

74. Hinds County failed to adequately train jailers and supervisors on inmate classification, protective custody, de-escalation, supervision, and response to threats and altercations, despite an obvious need for such training. This failure to train was deliberately indifferent and a moving force behind the violations.

75. Hinds County policymakers knowingly approved or tolerated deficient practices and failed to discipline or retrain involved staff, thereby ratifying the unconstitutional conduct.

76. These policies, customs, failures to train, and ratification directly and proximately caused Mr. Wilson's injuries and death.

### COUNT IV – MONELL / CONTRACTOR LIABILITY
### (Against QCHC of Mississippi, LLC f/k/a QCHC, Inc.,)

77. Plaintiff incorporates all preceding paragraphs.

78. QCHC maintained policies, customs, and practices that were the moving force behind deliberate indifference to detainees' serious medical needs, including minimizing outside

referrals, inadequate training and supervision, deficient documentation and follow-up, and cost-containment practices.

79.     These policies and practices caused QCHC staff to deny adequate evaluation, monitoring, and escalation of care to Mr. Wilson, in violation of the Fourteenth Amendment.

**COUNT V – RESPONDEAT SUPERIOR / VICARIOUS LIABILITY**
**(Against QCHC of Mississippi, LLC f/k/a QCHC, Inc.,)**

80.     QCHC is liable for the acts and omissions of its employees and agents committed within the course and scope of their employment that resulted in the constitutional violations alleged herein.

**COUNT VI – PUNITIVE DAMAGES**
**(Against QCHC of Mississippi, LLC f/k/a QCHC, Inc.,)**

81.     QCHC's conduct was willful, reckless, and in callous disregard of Mr. Wilson's constitutional rights, warranting punitive damages.

**COUNT V – SURVIVAL ACTION**
**(Pursuant to Miss. Code Ann. § 91-7-233 and 42 U.S.C. § 1988)**

82.     Plaintiff incorporates all preceding paragraphs.

83.     Prior to his death, Tyrone Wilson experienced conscious pain, suffering, fear, emotional distress, physical injury, and deprivation of his constitutional rights, including the right to adequate medical care and protection from harm.

84.     Pursuant to Miss. Code Ann. § 91-7-233 and 42 U.S.C. § 1988, these claims survive to the Estate of Tyrone Wilson and are recoverable in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Diana Morgan, as Administratrix of the Estate of Tyrone Wilson and on behalf of the wrongful death beneficiary of Tyrone Wilson, respectfully requests that upon

a jury trial of this cause, the Court enter judgment in her favor and award all relief due Plaintiff as set forth herein, including but not limited to the following:

A. An award of actual, general, and compensatory damages against Defendants, in amounts to be determined by the jury and/or the Court, for the injuries, pain and suffering, mental anguish, loss of life, and constitutional deprivations suffered by Tyrone Wilson and his beneficiary

B. An award of punitive damages against QCHC of Mississippi, LLC f/k/a QCHC, Inc., only, in an amount sufficient to punish and deter such Defendants and others similarly situated from engaging in like conduct in the future, for conduct undertaken with willful, reckless, or callous disregard for Mr. Wilson's constitutional rights;

C. An award of medical, funeral, and burial expenses incurred as a result of the acts and omissions of Defendants;

D. An award of costs and expenses, including reasonable attorneys' fees, expert witness fees, and litigation expenses, together with pre-judgment and post-judgment interest on all amounts found due and owing, including those fees and costs properly awardable pursuant to 42 U.S.C. § 1988(b);

E. Such other and further relief, whether legal or equitable, as the Court deems just, proper, and appropriate under the circumstances.

RESPECTFULLY SUBMITTED, this 6th day of February 2024.

**DIANA MORGAN, as Administratrix**
**of the Estate of Tyrone Wilson, and Behalf of**
**the Wrongful Death Beneficiary of**
**TYRONE WILSON**

BY: /s/ LaToya T. Jeter
LATOYA T. JETER
*Attorney for Plaintiff*

OF COUNSEL:

LaToya T. Jeter (MSB. NO. 102213)
BROWN BASS & JETER, PLLC
Post Office Box 22969
Jackson, Mississippi 39225
Telephone: (601) 487-8448
Facsimile: (601) 510-9934
Email: jeter@bbjlawyers.com
*Attorney for Plaintiff*